DAVID BURT v. EDWIN M. BURT.

*Replevin—Damages.*

Replevin does not lie against one who is not unlawfully detaining the property at the time the affidavit for the writ is sworn to and the writ delivered to the officer. So *held* where the writ was sworn out and held until defendant could be caught in temporary possession.

Damages allowed the defendant in replevin may include the value of the use of the property while it is kept from him by means of the replevin proceeding.

One who institutes an unfounded suit in replevin may incur damages as against the defendant, even though the latter does not own the property.

Error to Macomb. Submitted April 25. Decided June 4.

REPLEVIN. Plaintiff brings error.

*Crocker & Hutchins* for plaintiff in error. Defendant in replevin cannot recover damages for the detention of the chattels under the writ, unless he can show that he has some right of property in them, or has such a right to the use of them that actual loss has accrued to him from being deprived of them. *Barney v. Douglass*, 22 Wis., 464; *Bartlett v. Brickett*, 14 Allen, 62.

*Geo. M. Crocker* for defendant in error. In replevin

the plaintiff's case must rest on the facts as they existed on filing the affidavit and taking out the writ, *Cary* v. *Hewitt*, 26 Mich., 228.

COOLEY, J. This is an action of replevin for a span of colts, a wagon and a harness. The defendant is the son of the plaintiff, and the suit had its origin in a family difficulty.

The plaintiff's version of the facts, so far as they seem material in making out his case, is as follows: Plaintiff was married in 1841 to a Miss Prosser in the State of New York, and settled with her upon an eighty acre lot in Macomb county in this State, where the wife still resides. In 1859 he and his wife had a difficulty, and a separation was agreed upon. At that time he owned two eighty-acre lots, and it was agreed that the one on which the house was situated should be deeded to the wife's father for her benefit, and that plaintiff should retain the other. He deeded accordingly, and the father subsequently deeded to the wife. The children, of whom there appear to have been several, were to be left with the wife, and be taken care of by her, and her father was to see that she supported them. At the same time a bill of sale of the personal property was executed by plaintiff to the wife's father. This instrument was not produced in evidence, but plaintiff says "it was to be null and void in case we did not separate." He says they did not separate, but, under the advice of a neighboring justice of the peace, went on living together as before. Nevertheless, as near as we can gather from his testimony, he seems to have lived somewhere else than with his wife a large portion of his time from 1859 to 1877,—in Illinois, in Canada and in Lapeer,—while his wife remained on the farm with the children, retaining the personal property. This property was sold and exchanged from time to time, the defendant, so far as appears, being the active agent in these transactions. The two colts in controversy in this suit

were foaled by mares which defendant had obtained in trades for property left on the place by plaintiff, and the plaintiff traces title to the colts only as he shows that the mothers must have been his, because his property was traded for them by defendant. It does not appear that they were ever in plaintiff's possession, for as the wife was owner of the homestead where the family resided who kept and used the colts, they were presumptively in her possession all the time. The wagon was obtained by defendant in a similar manner. The evidence is by one of plaintiff's witnesses: "Edwin told me he traded a mare (the mother of one of the colts in controversy), and after trading several times, traded a mare he finally got of Marsh Giddings for the wagon. It remained on the farm." There is some evidence that the harness in controversy was bought by plaintiff, and paid for in part by him and in part by defendant, but there seems to be some uncertainty on plaintiff's evidence whether the harness bought by plaintiff, and which went to and was left upon the farm, was not traded off by defendant. Plaintiff testifies that the harness "is the same now in controversy unless it has been traded for this harness."

In April, 1877, plaintiff seems to have been living on the farm with his wife. The defendant and one of his brothers were arrested on a charge of larceny, and offered plaintiff as bail. Some question being made as to his responsibility, defendant spoke of his father's property, and of the colts now in suit belonging to him. Plaintiff went away again in August, 1877, because, as he says, he did not consider it safe to stay there. He says:

"I couldn't handle my property without being knocked down by my boys. They threatened my life, and I thought I would leave. Before leaving I had a conversation with Edwin, the defendant: I told him to leave the place, and let my property alone: to have nothing to do with it. He told me if I interfered with his handling the property, he would fix me so that I would stay fixed."

This is all the evidence of the relations of the parties to each other and to the property that it seems neces-

sary to give, though it is proper to say that plaintiff testifies that between 1859 and 1877, when he was "on and off," he was accustomed to send home money for the support of the family, and among other remittances he sent sixteen dollars to pay the charges for siring the colts now in controversy. Respecting the replevy of the property in suit, plaintiff testified:

"I went away and replevied these colts in April, [1878]. I forbade him [defendant] using anything on the place. Had seen him driving the colts frequently before I replevied them. I did not know where these colts were when I took the papers out for them. Thought I knew where they were, because I had seen the defendant using them. The affidavit for the replevin was made on the 25th of April, and the property was taken on the 26th. They were taken a little before dark, I think, on the 26th. Gave writ to constable same day I took it out. Told constable he would find property in town before long; don't think I told him to catch the property off the farm. I might have told him I could not replevy them unless they were off the farm. I swore they were in his possession. I had been served with an injunction preventing me meddling with anything on the farm, and had left them in her possession."

We do not deem it necessary to go into the evidence further. It was admitted that plaintiff made no demand for the property before bringing suit, and the jury, under instructions of the court, gave their verdict against him. Forty-five errors are assigned on the record, only one of which it seems necessary for us to examine, and that relates to the question of damages.

It seems perfectly clear to our minds that the plaintiff by his own evidence put himself out of court. Whether he would have been able, in any suit at law, to trace title in himself to the colts and wagon through the several trades that had been made, is a question of much interest, but which we shall not now discuss. It is enough for the purposes of this suit that the plaintiff has shown that the possession of the defendant was not wrongful.

Putting out of view now the bill of sale made in 1859 to the wife's father, and assuming that to have been or

to have become inoperative, the facts then appear to be these: Plaintiff left his personal property in possession of his wife. The son lived with her as a part of her family. She carried on the farm, and the property was used for the purposes of herself and the family. Without, so far as appears, any objection by the plaintiff, particular parcels of this property were from time to time traded off by the defendant, and the plaintiff sanctioned the trades by claiming afterwards that which was received in exchange. Some time before plaintiff left finally in 1877 he ordered defendant off from the place, and forbade his meddling any further with the personal property. Up to this time there is not a particle of showing that defendant had wrongful possession of anything. But the order by plaintiff that defendant should leave the premises was a mere nullity, for the premises were not his, but his wife's, and she had a right to allow her children to reside there with her, as she had theretofore. From this time up to the bringing of the suit there is no evidence whatever that defendant had had possession of the property which was replevied from him. The property had been left in possession of the wife, and there it remained and was when plaintiff made his affidavit that defendant wrongfully detained the property from his possession. Having made this affidavit, plaintiff seems to have awaited an opportunity to catch the defendant in possession of the property, that he might then take it from him. He succeeded in finding him with it off the farm, and the officer then seized it.

Whether the possession of the team by defendant at the time the writ was served was not to be deemed the possession of his mother is a question upon which there might well be differences of opinion. But we think there can be none that while the property remained on the farm, it was constructively in the mother's possession. It follows that defendant, at the time the affidavit was made and the writ delivered to the officer, did not unlawfully detain the property from the plaintiff. We take no notice

of the injunction which incidentally appears in the case, restraining the plaintiff from intermeddling with the property on the farm, both because it is not explained and because it is not material.

It thus appearing from the plaintiff's evidence that he has no cause of action, it would be worse than mischievous to examine in detail the several assignments of error, in order that we might see whether there was not some erroneous ruling upon which we might send the case back to another vain trial. Any future trial would necessarily result in the same verdict that was rendered on the first. The judge correctly instructed the jury that "if they should find that at the commencement of this suit the property in question was on the farm in the possession of plaintiff's wife, and that plaintiff had, when leaving in August, 1877, left the same there, then you should find for the defendant." Upon this the jury could come to but one conclusion: the plaintiff's own evidence settled it.

A question remains whether there was any error in the rule of damages given to the jury. The judge permitted them to give as damages to the defendant the value of the use of the property while it was kept from him by means of the replevin proceedings. This, it is argued, was improper, because confessedly the property did not belong to defendant. But the liability to damages in such a case is one of the perils a party incurs when he institutes an unfounded suit. It may be that, as the suit was defended in the right of plaintiff's wife she is entitled to the recovery; but that does not concern the plaintiff now. His liability to damages is undoubted, but the equities between the defendant and his mother are not to be adjudicated in this suit.

The judgment must be affirmed with costs.

The other Justices concurred.