LeDUC *v.* BEECHLER.

1. APPEAL AND ERROR—DIRECTED VERDICT—DAMAGES.
   On review of judgment for defendant for damages in replevin, errors on trial were not prejudicial where defendant was entitled to directed verdict, provided damages awarded are not excessive.

2. REPLEVIN—WHAT PLAINTIFF REQUIRED TO SHOW.
   Plaintiff bringing replevin for berries alleged to have been wrongfully taken from his land was required to show that they were wrongfully taken and delivered to defendant within at least two or three days before issuance of writ, where defendant shipped at least every other day, since there must have been tortious taking or detention at time suit was brought.

3. SAME—IDENTIFYING GOODS TAKEN—DIRECTED VERDICT.
   Where some of berries in defendant's possession were rightfully his and plaintiff failed to identify those replevined as coming from his land, defendant was entitled to directed verdict, leaving to jury only question of his damages.

4. SAME—DAMAGES—EXCESSIVE AWARD.
   Award of damages to defendant for berries replevined cannot be said to be excessive, where within range of testimony.

Error to Chippewa; Runnels (Herbert W.), J. Submitted October 23, 1930. (Docket No. 171, Calendar No. 34,516.)    Decided December 2, 1930.

Replevin by Charles LeDuc, Jr., against John Beechler to recover 70 crates of blueberries. Judgment for plaintiff in justice's court. Defendant appealed to the circuit court. Judgment for defendant. Plaintiff brings error. Affirmed.

*John W. Shine,* for plaintiff.

*McDonald & Kaltz,* for defendant.

North, J. By replevin in justice's court plaintiff took from the defendant on August 30, 1928, 70 crates of blueberries. Plaintiff claimed these berries on the ground that they were gathered from lands in which he had the berry rights, or he claimed at least that quantity of berries had been so gathered and by defendant wrongfully commingled with substantially 200 cases in the latter's storehouse and from which quantity these 70 cases were taken by the officer executing the writ. The general facts involved in this litigation are the same as in the recently decided case of *LeDuc* v. *Schnepp,* 249 Mich. 622. We will not detail them again. On appeal the verdict and judgment in the circuit court were in favor of defendant, who had waived return of the property. Damages were awarded to him in the amount of $261.38. Plaintiff's motion for a new trial was denied. He reviews by writ of error and has embodied in the record 27 assignments. One of these is that the verdict was against the overwhelming weight of evidence; and with the exception of a claim of excessive damages, which will be noted later, all the other assignments relate to the charge of the court or to the court's refusal to give the requests preferred by plaintiff. At the close of the proofs, defendant moved for a directed verdict in his favor. If he was entitled to have this motion granted, the errors complained of were not prejudicial, provided the damages awarded were not excessive.

We will first consider whether defendant's motion for a directed verdict should have been granted. Throughout this trial defendant's attorney took the position that plaintiff could not lawfully replevin these 70 crates of berries unless he proved that they

had been taken from plaintiff's lands without right or unless an equal or greater amount of berries wrongfully taken from plaintiff's land constituted by commingling a part of the quantity of berries from which the 70 cases were seized. There were at least 200 berry pickers in this locality who were working upon the lands in which plaintiff had the berry rights and also upon many acres of other lands in which he had no rights. They, or at least some of them, were selling to other buyers as well as to defendant. It is undisputed that defendant at least every other day shipped the berries he purchased to their destination in Milwaukee or Chicago. It is therefore obvious that to enable plaintiff to make a case it was necessary that he should show that the berries replevined or a like amount commingled with defendant's berries were wrongfully taken from plaintiff's lands and delivered to defendant within at least two or three days before the issuance of the writ. Wrongful possession at an earlier date of berries belonging to plaintiff would not sustain an action of replevin. There must have been a tortious taking or detention at the time suit was brought. *Burt* v. *Burt,* 41 Mich. 82; *Aber* v. *Bratton,* 60 Mich. 357. On this issue plaintiff testified in substance:

They were bringing berries to Beechler there every day up to the time I replevined these (70 crates). I saw in the neighborhood of three or four thousand crates all told which were picked off of my land. (Evidently meaning during the season.) I was there at the time the officers replevined the berries. At that time there might have been between two and three hundred crates there. Some of the berries that were replevined were brought in that day and some the day before. The crates were all alike and it was impossible to tell one from the

other, or where they were picked. I was there the day before (the berries were replevined) when the pickers brought the berries in there. I saw a good portion of those pickers picking there (upon my lands) for two or three days previous to the seizure of these berries. I don't know of a single berry that was picked on the day I started this lawsuit (August 30, 1928); but I know the berries were picked off my land on the day before. I don't know as to these 70 crates. I know who picked a part of the berries, or unloaded them. I was here (in Sault Ste. Marie) the day the seizure was made. I was not at the warehouse (in Shelldrake) during that day. (But plaintiff was there late in the day when the berries were replevined.) I do not know whether defendant had there at any time berries from any other place than my land.

"*Q.* Whom did you see pick those berries (on August 29th or 30th)?

"*A.* I don't know the names of two hundred strangers.

"*Q.* As a matter of fact, you don't know where a single one of those berries were picked of your own personal knowledge?

"*A.* I saw them picked between Shelldrake and the Betsy river at the bridge (presumably on plaintiff's land). * * * I dare say I saw 20 that particular day. I was there when they brought them in. * * * That was the day before the berries were seized."

From this and other testimony of like character it is clear that there is evidence from which a jury might have found defendant had berries in his possession at the time the writ was issued which were taken from plaintiff's lands. But neither from the foregoing testimony nor from any other testimony in the record is it possible to determine what quantity of berries so taken were at that time in de-

fendant's possession. The jury had no way of finding that 70 crates of berries, the amount replevined, or any definite number of crates of plaintiff's berries were then unlawfully held by defendant.

Plaintiff's difficulty in establishing a case was very much increased by the fact that he had granted permits to pick berries upon his lands to many persons. He claimed he had given at least some of them notice that their permits would be canceled if they sold to buyers who were not authorized to operate in the locality; but as we understand the record, the only notice so given was given at the time these berries were replevined, at least it is not shown that it was given at a prior date. In part, plaintiff's own testimony on this phase of the case is as follows:

"*Q.* You sold the privilege to the pickers of coming in and picking berries?

"*A.* I sold a few.

"*Q.* How many did you sell?

"*A.* I issued two hundred. Very few of these were given away.  *  *  *  Those permits I gave to some of the pickers were given on conditions; that they were to be  *  *  *  sold to authorized buyers only. To some of them there was a small charge made for the permits; one dollar. That gave them the right to pick as long as they sold to authorized buyers.

"*Q.* And when you notified those people there in front of Beechler's (defendant's) place that he was no longer an authorized buyer, did you tell them that they were not to deliver to him any more?

"*A.* I did, and the permit automatically ceased to have any value."

It is obvious that, at least until their permits were canceled, pickers to whom plaintiff had given the privilege had a right to gather berries from his

lands. If in the regular course of trade they subsequently sold them to defendant, plaintiff could not rightfully complain. This circumstance practically nullifies the probative force of the testimony from which plaintiff might otherwise claim that there was a showing that at the time the writ was issued defendant had berries in his possession which were not only taken from plaintiff's land but wrongfully taken.

A careful consideration of this record forces the conclusion that the defendant's motion for a directed verdict at the conclusion of the proofs ought to have been granted, leaving to the jury only the question of the amount of defendant's damages. This eliminates from this phase of the case plaintiff's contention that the verdict was against the great weight of testimony. If, as plaintiff claims, his right to the berries on the lands in question was established by proof of record title, the court as a matter of law should have so instructed the jury. But had this been done, still the plaintiff would have failed to make a case.

The only other question which need be noted is plaintiff's claim that the amount allowed by the jury was excessive. Upon consideration of the record we are satisfied that the amount awarded was within the range of the proofs taken.

For the same reasons noted in *LeDuc* v. *Schnepp, supra,* plaintiff has failed to establish a right to recover against the defendant herein. The judgment entered below is affirmed, with costs to appellee.

WIEST, C. J., and BUTZEL, CLARK, McDONALD, POTTER, SHARPE, and FEAD, JJ., concurred.